```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re                                                              NOT FOR PUBLICATION
        Steven M. Masic, Sr.
        SSN: xxx-xx-1665                                           Case No. 17-10312 MJK

                                Debtor
------------------------------------------------------------------
```

## OPINION AND ORDER AFTER EVIDENTIARY HEARING

The Debtor was engaged in renovating a piece of commercial real estate into a chain restaurant. He filed for relief under Chapter 13 on February 21, 2017. Although his proposed Plan offers only five cents on the dollar to general unsecured creditors, the Chapter 13 Trustee has not yet recommended it for confirmation. Once allowance and disallowance of claims is complete, the percentage could rise substantially, possibly even to one hundred cents on the dollar.

And so, the Court conducted an evidentiary hearing on August 15, 2017, upon the Debtor's objection to a $10,692 Proof of Claim filed by Peter Fontanarosa as to construction on the real estate. Both parties appeared without counsel.[1] Each was sworn, permitted to testify to the facts and to offer documentary evidence, and were allowed to ask questions of each other through the medium of the Court.

The issue is this. Was the Debtor obligating himself personally, or only his Limited Liability Company ("Romas"), when he signed his own name on four remodeling work orders for improvements that Mr. Fontanarosa was to make on commercial real estate that the Debtor was converting into a restaurant - - real estate owned by Romas LLC, a company of which the Debtor is the sole owner.

---

[1] Local Rule 2016-1(b) does not require that a debtor's counsel include claims' objections in the retainer agreement. As Fontanarosa Construction is a sole proprietorship, Mr. Fontanarosa may represent himself in litigation.

After hearing the testimony, observing the demeanor of the parties under oath, considering the documentary evidence, and applying the applicable principles of New York law, the Court rules in favor of Mr. Fontanarosa but in the reduced amount of ten thousand dollars "even".

## APPLICABLE STANDARDS AND BURDEN OF PROOF

The applicable standards are well stated in the article on "Agency" in 2A New York Jurisprudence 2d (2009). In Section 371 thereof, it is stated that **"an agent who makes a contract in his or her own name for an undisclosed principal is liable as a principal on the contract. Thus, a person acting as agent for another is individually liable if, at the time of making the contract, he or she fails to disclose the agency, regardless of whether or not he or she was authorized to execute the contract. As between the agent and the third party, the agent is liable as principal to the same extent as if he or she had not been acting for another."** [Citations omitted]

An exception is found at Section 335 of the Article. **"Generally, a third person who knows that an agent is acting for a disclosed principal in executing a contract cannot hold the agent liable thereon, unless it is clear that the agent intended to bind himself or herself personally. Thus, where one party to a written contract is known to the other to be in fact acting as agent for some known principal, the party does not become personally liable whether he or she signs individually or as agent. The knowledge of a third person obtained in a former transaction with an agent, [knowledge] that he or she was acting as an agent for a disclosed principal, is deemed to continue in a subsequent transaction of the same character between the same parties."** [Citations omitted]

In bankruptcy cases a properly signed and filed Proof of Claim is entitled to a presumption of validity and amount. (Rule 3001(f), Federal Rules of Bankruptcy Procedure.) The party objecting to the claim (consequently) has the initial burden of coming forward with evidence of sufficient probative value and weight to overcome the presumption. After that, the burden of proof rests with the party who would have the burden of proof about such a claim in a civil action outside bankruptcy court. [9 Collier on Bankruptcy ¶ 3001.09[2] (16th ed.)]

So the Court began by hearing the Debtor's testimony and receiving his documentary evidence as to why the Court should find that Mr. Fontanarosa knew that when the Debtor signed only his name as "owner" on the work orders, he actually was signing only as an agent for Romas.

## FINDINGS OF FACT

1. The Documentary Evidence proves that in 2011 the Debtor owned an entity called Players Properties LLC ("Players") which owned a building at 520 Niagara Street, Niagara Falls, New York.

2. By the Debtor's testimony and by his documentary evidence, it is clear that in September of 2011, the Debtor caused Players to convey that property to Romas Properties LLC, which he also owned.

3. Prior to 2014, the "Parties" (meaning the Debtor, the Debtor's companies or any of his dbas, and Mr. Fontanarosa) had not done business together, according to both witnesses.

4. In 2014 Mr. Fontanarosa submitted a bid to the Debtor to do work on the property. (There were architectural plans that the Court has not seen.) The Debtor and Mr. Fontanarosa met together.

    5. Four work orders were signed. They were produced on Fontanarosa letterhead and provided lines for the "owner" to sign.

    6. It is not clear whether the word "owner" was intended by Mr. Fontanarosa to mean the owner of the real estate or the owner of whatever firm was contracting with him. In any event, each was signed by Mr. Masic, printing his name on one and adding his signature on the other.

    7. No mention was made in these work orders of any business entity other than Fontanarosa Construction.

    8. The total dollar amount of work to be performed was a bit over $40,000.

    9. Twenty-nine thousand eight hundred dollars was paid to Fontanarosa Construction Company by means of several <u>Romas</u> checks. <u>Thus the Debtor argues that Mr. Fontanarosa knew that he was dealing with Romas Properties LLC, not individually with Mr. Masic.</u>

    10. When Mr. Fontanarosa took the stand, he stated that he did not care where Mr. Masic's money came from. He made no inquiry into what Romas Properties LLC was. The Court finds his testimony in that regard to be worthy of belief. Having presided over numerous construction company cases for over twenty-five years, the Court is aware that payments for work performed might come in from sources other than the contractor – a construction loan mortgage holder, factors, bonding companies, general contractors, etc. (See, for example, *In re Dommer Const. Corp.*, 2011 WL 832901(Bankr. WDNY 2011) and *In re Admiral's Walk, Inc.*, 135 B.R. 105 (Bankr. WDNY 1991)).

    11. The Debtor next argues that when certain grant monies that the Debtor was to receive from the municipality towards the completion of the project were delayed, he told Mr. Fontanarosa of that fact and told Mr. Fontanarosa that he didn't have the money in his

"business account" to make the payments that Mr. Fontanarosa was demanding. Mr. Fontanarosa went to city hall to attempt to assist the Debtor in expediting the arrival of the grant monies. The Debtor argues: (1) that Mr. Fontanarosa must have learned then that the true owner of the property was Romas, and should have concluded that his contract was not with the Debtor, but was with Romas, and (2) that his telling Mr. Fontanarosa about the "business account" put Fontanarosa on notice that the contract was with Romas, not Masic.

12. For his part, Mr. Fontanarosa says that he did not learn of the existence of Romas until 2017 when he went to the county clerk's office to file a mechanic's lien against the property. He attests that he did not get into the "details" of the grant transaction, but simply attempted to help the Debtor out in expediting receipt of the grant monies. The Debtor's argument is, thus, problematic in at least two regards. First, it relies on speculation and conjecture as to what Mr. Fontanarosa actually learned in his efforts at city hall (the Debtor has produced no documentary evidence of what Mr. Fontanarosa saw, heard, or received in connection with those efforts[2]); speculation and conjecture which Mr. Fontanarosa expressly denies. Secondly, the timeline is not completely clear to the Court. To the extent that Mr. Fontanarosa already performed work before he theoretically might have learned of the existence of Romas while he assisted at city hall, such knowledge would be irrelevant. He would already have contracted with the Debtor and have performed work in reliance on the Debtor's credit, not on the credit of Romas.[3]

---

[2] Perhaps if the Debtor had inquired at city hall, he would have been able to see what Mr. Fontanarosa saw. Cf., *In re Manko,* 2014 WL 117301 (Bankr. WDNY 2014)

[3] If Fontanarosa Construction did not wish to rely solely on the credit of Mr. Masic, it might have performed a title search to discover the true owner, and to discover whether mortgages and other liens had already been filed against the property, and to see any written agreements between the true owner and Masic, and to see what insurance was in place at the property, etc. Certainly these issues are well documented in much larger transactions involving banks, development agencies, and layers of subcontractors, etc. However, it is the Court's experience that even in very large

13. After both parties had presented their evidence as to the question of whether Mr. Masic was personally liable, the Court turned at the Debtor's request to whether Mr. Fontanarosa's Proof of Claim overstated the amount due as $10,692. The Debtor specifically challenged two charges totaling a bit over $1,000. A doorframe and door installation that was not completed and an ADA door that the Debtor stated, "does not meet code". Mr. Fontanarosa acknowledges that he did not install one door, but rather left it on the premises having gotten "fed up" with the "situation". As to the ADA door, he disputes the interpretation of the Building Code. The Court will disallow $692 of his claim, and allow the claim in the amount of $10,000.

## CONCLUSION

The Fontanarosa claim is reduced to $10,000 and allowed as a general unsecured claim. If Mr. Fontanarosa receives anything upon his mechanic's lien as a result of the mortgage foreclosure or otherwise, he is to inform the Court immediately, in writing, with a copy to the Andreozzi Bluestein law firm, attention of Ruth Wiseman, Esq.

As noted at the outset of this decision, it is not yet known what percentage of Mr. Fontanarosa's $10,000 allowed claim will be paid over the course of the Debtor's five year chapter 13 plan. If the required payments and percentage are increased, Fontanarosa Construction will not receive notice from the Court or from the Chapter 13 Trustee, because that would be "good news" for any creditor, not an "adverse" change in the Plan. And so the

---

transactions, subcontractors scrounging for work do not go to look at the recorded documents, and so are simply taking a risk that if they end up having to lien the project because of non-payment, there would be enough value in the real property (that they helped to improve) to reach their mechanics' liens. In the present case, the property is in mortgage foreclosure and the possibility of Fontanarosa receiving anything upon his mechanic's lien seems remote, given that prior recorded mortgages are superior to a mechanic's lien in the State of New York.

Court directs that the <u>Andreozzi Bluestein firm inform Fontanarosa Construction</u> of whatever percentage of the ten thousand dollars it will receive from whatever plan the Court confirms, and when it might likely start to receive payments.

        SO ORDERED.

Dated:    Buffalo, New York
            August 22, 2017

                                                                         _s/Michael J. Kaplan_
                                                                               U.S.B.J.